## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **MICHAEL WAYNE HOWELL,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION 24-0241-WS-C** |
| | ) |
| **STATE FARM MUTUAL** | ) |
| **AUTOMOBILE INSURANCE** | ) |
| **COMPANY,** | ) |
| | ) |
| **Defendant.** | ) |

### ORDER

This removed matter is before the Court on the defendant's motion to dismiss. (Doc. 9).[1] The parties have filed briefs in support of their respective positions, (Docs. 9, 11, 14, 32, 34), and the motion is ripe for resolution. After careful consideration, the Court concludes that the motion is due to be granted in part and denied in part.

### BACKGROUND

The amended complaint, (Doc. 6), contains the following allegations:

The defendant is the plaintiff's automobile insurer under a certain policy ("the Policy"), which includes underinsured motorist coverage with limits of $500,000. The plaintiff was injured by an underinsured driver ("Wilbur"), whose policy limits were $50,000. The defendant established through binding arbitration that Wilbur was solely at fault, to the exclusion of any fault of the plaintiff. The plaintiff's damages clearly exceeded Wilbur's $50,000 policy limits. The plaintiff sued both Wilbur and the

---

[1]The defendant filed a motion to dismiss the original complaint, (Doc. 3), to which the plaintiff responded by timely filing an amended complaint. (Doc. 6). Because "an amended complaint supersedes the initial complaint and becomes the operative pleading in the case," *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1219 (11th Cir. 2007), the defendant's initial motion to dismiss is **denied as moot**.

defendant in state court. Wilbur's insurer offered to settle for policy limits in exchange for a release. The Policy provided that the plaintiff must obtain the defendant's consent in order to settle with a tortfeasor such as Wilbur. Under state law, such a provision is valid for only two reasons: to protect the insurer's subrogation rights against the tortfeasor, and to protect the insurer from collusion between the insured and the tortfeasor. State law also requires that an insurer's refusal to consent to a settlement between its insured and the tortfeasor must be reasonable.

Had the defendant consented to the settlement, the case would have proceeded to trial against the defendant alone, on damages alone. The defendant represented to the state judge that it refused to consent to the settlement because it had questions about whether the plaintiff was at fault. The defendant's actual reason for refusing to consent to the settlement was the impermissible one that it believed a jury would award lesser damages against Wilbur, as an individual, than it would against the defendant, as a large company, and that it therefore did not want to be the defendant at trial. As a sanction for providing a false reason for its refusal to consent to settlement, the state court prohibited the defendant from seeking subrogation against Wilbur. Even though there was no evidence of collusion, and even though the court's ruling took subrogation off the table, the defendant again refused to consent to settlement.

The defendant's refusal forced the plaintiff to pursue Wilbur to trial, since the defendant would deny coverage were the plaintiff to settle with Wilbur without the defendant's consent. The defendant opted out of trial after advancing the plaintiff the $50,000 limits of Wilbur's policy, but this was improper under state law due to the defendant's unreasonable refusal to consent to settlement. At trial, the jury found for the plaintiff and awarded damages of $275,700. The jury would have awarded greater damages had the defendant been present at trial.

The amended complaint fails to set forth causes of action in separate counts. *See generally* Fed. R. Civ. P. 8(d)(2), 10(b). The parties, however, agree that the pleading attempts to set forth the following claims: (1) breach of contract; (2) bad faith; (3) fraud;

and (4) outrage.  (Doc. 6, ¶¶ 11, 16-19, 23, 30-35, 37-38; Doc. 9 at 22-29; Doc. 11 at 15-31).

## DISCUSSION

The defendant seeks dismissal of all claims asserted against it.  Its grounds include:  (1) res judicata; (2) collateral estoppel; and (3) failure to state a claim.  (Doc. 9 at 14).  The motion invokes only Rule 12(b)(6).  (*Id*. at 1).

## I. Res Judicata.

The plaintiff filed an amended complaint in the underlying action, in which he asserted against the defendant herein claims for breach of contract, bad faith, fraud, and outrage.  (Doc. 9-1 at 125-27).  The defendant filed a motion to dismiss these claims, (*id*. at 129-37), which motion the state judge granted.  (*Id*. at 163).  The defendant argues that the plaintiff's assertion of these claims in this action is barred by the doctrine of res judicata.  (Doc. 9 at 16-19).

"Where the first suit is brought in state court and the second suit is brought in federal court based on diversity, state law of res judicata is to be applied."  *Amey, Inc. v. Gulf Abstract & Title, Inc*., 758 F.2d 1486, 1509 (11th Cir. 1985); *accord Green v. Jefferson County Commission*, 563 F.3d 1243, 1252 (11th Cir. 2009).  The parties agree that Alabama law governs resolution of the defendant's res judicata defense.  (Doc. 9 at 16; Doc. 11 at 8).

"The elements of res judicata are (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions."  *Burkes v. Franklin*, 376 So. 3d 455, 460 (Ala. 2022) (internal quotes omitted).  Res judicata is an affirmative defense, and the defendant "ha[s] the burden of proving all four elements of that defense."  *Dupree v. PeoplesSouth Bank,* 308 So. 3d 484, 489 (Ala. 2020).

In support of its motion, the defendant has submitted copies of certain state court documents, including:  (1) the plaintiff's amended complaint; (2) the defendant's motion

to dismiss the amended complaint; (3) the plaintiff's brief in opposition; and (4) the state court's order granting the motion to dismiss.  (Doc. 9-1 at 122-55, 163).  "Courts may take judicial notice of publicly filed documents, such as those in state court litigation, at the Rule 12(b)(6) stage."  *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015).  This rule applies when the issue is one of res judicata. *Concordia v. Bendekovic*, 693 F.2d 1073, 1076 (11th Cir. 1982) ("a copy of the state trial court's records" may be consulted "in order to apply the doctrine of res judicata in the context of ... a Rule 12(b)(6) motion to dismiss"); *accord Harrell v. Bank of America, N.A.*, 813 Fed. Appx. 397, 400 (11th Cir. 2020); *Sporea v. Regions Bank, N.A.*, 2021 WL 2935365 at *2 (11th Cir. 2021).

## A.  Judgment on the Merits.

The parties agree that, under Alabama law, a dismissal under Rule 12(b)(6) for failure to state a claim is a ruling on the merits for purposes of res judicata analysis, while a dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction is not a ruling on the merits for that purpose.  (Doc. 11 at 8; Doc. 14 at 4).  In its state-court motion to dismiss, the defendant sought dismissal of all four claims under Rule 12(b)(6) for failure to state a claim.  (Doc. 9-1 at 129-36).  In addition, the defendant sought dismissal of the contract claim "for lack of subject matter jurisdiction."  (*Id*. at 131).  The defendant further sought dismissal of the bad faith claim as "premature," (*id*. at 133), an argument it expressly based on *Pontius v. State Farm Mutual Automobile Insurance Co*., 915 So. 2d 557 (Ala. 2005), which characterizes such an argument as "challeng[ing] the subject-matter jurisdiction of the court."  *Id*. at 564.  Thus, the defendant sought dismissal of the contract and bad faith claims under both Rule 12(b)(6) and Rule 12(b)(1).[2]

The state judge's order reads in its entirety as follows:  "The Defendants' Motion to Dismiss the new claims in the Amended Complaint is GRANTED."  (Doc. 9-1 at 163).

---

[2] The defendant's description of its motion as a "12(b)(6) motion," (Doc. 9 at 7-8), resting "on the grounds that [the state complaint] failed to state any claim upon which relief could be granted," is at best incomplete.

The defendant insists that, despite its opacity, the order disposed of all four claims on their merits under Rule 12(b)(6). As to the contract and bad faith claims, the Court is skeptical.

"Although a dismissal without prejudice does not constitute an adjudication on the merits, [citation omitted], a dismissal with prejudice does [citation omitted]." *Alfa Life Insurance Corp. v. Jackson*, 906 So. 2d 143, 155 (Ala. 2005). "A dismissal for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) is with prejudice to plaintiff's right to file another action against that defendant." *Ex parte Harrington*, 289 So. 3d 1232, 1237 n.7 (Ala. 2019). On the other hand, "a dismissal for lack of subject-matter jurisdiction is treated as a dismissal without prejudice to the plaintiff's right to reinstate the action." *Pontius*, 915 So. 2d at 564.

Given these authorities, had the state judge dismissed all claims with prejudice, that might establish that his ruling on the contract and bad faith claims was based on Rule 12(b)(6) rather than Rule 12(b)(1). The court, however, made no such pronouncement. The defendant says that no such pronouncement was needed because, under Alabama law, a dismissal is automatically with prejudice (and therefore on the merits) unless the order expressly makes it without prejudice. (Doc. 9 at 17; Doc. 14 at 2). The defendant relies on Alabama Rule of Civil Procedure 41(b), which provides generally that an order of dismissal "operates as an adjudication on the merits," "[u]nless the court in its order for dismissal otherwise specifies." According to the defendant, this means that, "[i]f the court intended to dismiss the contract and bad faith claims without prejudice, it had to say so to avoid the default rule of" Rule 41(b). (*Id*. at 4). "[G]iven the nature of the claims, and the silence of the order as to whether it was with or without prejudice, the Court's ruling must necessarily have been an adjudication on the merits, rather than a dismissal for lack of subject matter jurisdiction." (*Id*.).

The defendant overlooks a key exception to the reach of Rule 41(b), which by its terms does not apply to "a dismissal for lack of jurisdiction." If the state judge dismissed the contract and bad faith claims under Rule 12(b)(1), those dismissals as a matter of law are neither on the merits nor with prejudice, regardless of whether the judge spelled out

such matters in his order. The order's failure to specify whether the dismissals were with or without prejudice thus sheds no light on the basis of the state court's ruling.

The defendant next argues that the state judge could not have dismissed the contract and bad faith claims based on Rule 12(b)(1), because "[n]o case law supports an argument that a claim for breach of contract or bad faith, based on an UIM insurer's refusal to consent to a tortfeasor's settlement, is 'premature' and thus beyond the trial court's subject matter jurisdiction," meaning that those claims "were invulnerable to such [a jurisdictional] attack." (Doc. 9 at 18; Doc. 14 at 2). That is obviously not what the defendant represented to the state judge, (Doc. 9-1 at 131-33), but in any event the defendant has not attempted to demonstrate that, for res judicata purposes, the first judge must be deemed not to have relied on any argument pressed by the defendant which, upon further (and self-interested) reflection, appears ill-founded. As the party bearing the burden of establishing each element of the res judicata defense, that failure is dispositive.

The defendant is left with no principled means of determining whether the state judge dismissed the contract and bad faith claims based on the defendant's jurisdictional argument or based on its merits argument. As "the party asserting the bar of res judicata, [the defendant] has the burden of showing the meaning of the former adjudication." *Ex parte Sears, Roebuck and Co.,* 895 So. 2d 265, 270 (Ala. 2004). When both merits and non-merits rationales might support the first court's ruling, but that court simply grants or denies a motion "without stating its reasons for doing so," the second court "can only speculate as to the reasons for its" ruling. *Id.* In such a situation, "[w]here it is unclear whether [the ruling] rests on consideration of the merits or [not], a second action is permitted." *Id.* The plaintiff relies on *Sears*, (Doc. 11 at 5, 9, 10 n.5), and the defendant offers no response. The Court concludes that *Sears* governs here.

In summary, the defendant has carried its burden of showing a judgment[3] on the merits with respect to the fraud and outrage claims but not with respect to the contract and bad faith claims.

---

[3] The plaintiff accepts the defendant's assertion that the trial judge's order merged into the final judgment entered in the action. (Doc. 9 at 17).

### B.  Court of Competent Jurisdiction.

For purposes of res judicata analysis, "[a] court of competent jurisdiction is a court with jurisdiction over the subject matter."  *Lloyd Noland Foundation, Inc. v. HealthSouth Corp.*, 979 So. 2d 784, 795 (Ala. 2007).  The plaintiff construes this statement as referring to any defect in jurisdiction in a particular case (such as ripeness).  The Court understands it as referring to category-based restrictions on jurisdiction (such as the $6,000 threshold for original jurisdiction by Alabama circuit courts).[4]  Under the Court's understanding, the state court was one of competent jurisdiction as to all four causes of action.  Even if the plaintiff's interpretation were accepted, he concedes it implicates only the contract and bad faith claims, (Doc. 11 at 10), rendering his argument redundant with that addressed in Part I.A.

### C.  Substantial Identity of the Parties.

The plaintiff sued the defendant in the state action; the plaintiff sued the defendant in this action.  It is difficult to imagine a tighter identity of the parties.  The plaintiff nevertheless suggests that, because the defendant had opted out of appearing at trial before the state judge dismissed the plaintiff's claims, this element may not be satisfied. (Doc. 11 at 11).  Even the plaintiff recognizes that his argument has no legal support and is being advanced "out of an abundance of caution."  (*Id*. at 11 n.7).  The defendant's opting out of appearing at a trial of the underlying motor vehicle accident plainly did nothing to alter its status as a defendant to the causes of action asserted against it by the plaintiff.

### D.  Same Cause of Action.

The claims dismissed by the state judge all addressed alleged misconduct by the defendant with respect to its UIM coverage.  The contract claim alleged that the

---

[4] Ala. Code § 12-11-30(1).

defendant breached a Policy term regarding consent to settlement.  The bad faith claim alleged that the defendant did so in bad faith.  The fraud claim alleged that the defendant misrepresented to the state court its reasons for refusing to consent, and the outrage claim alleged that all of this conduct was extreme and outrageous.  (Doc. 9-1 at 125-27).  The plaintiff argues that the fourth element of res judicata is not satisfied because these four claims "are separate causes of action" from both "the underlying car wreck" and a simple claim for UIM benefits.  (Doc. 11 at 11-12).  This is presumably correct, but it is beside the point; the relevant comparison is between the claims dismissed in state court and the claims asserted in the subsequent federal action.

The defendant describes this action as alleging "the same breach of contract and tort claims ... based on the same alleged conduct" as in the state action.  (Doc. 9 at 10).  Although the statement of the claims in this case is not a verbatim repetition of those in the state-court amended complaint, the Court can perceive no daylight between them, and the plaintiff proposes none.

### E.  Judicial Estoppel.

The plaintiff argues that, to the extent the state judge dismissed the amended complaint for lack of subject matter jurisdiction, the defendant (because it offered, and profited from, the jurisdictional argument) is judicially estopped to raise a res judicata defense.  (Doc. 11 at 1-2, 5-8).  Because its effect can extend no further than the contract and bad faith claims that, as explained in Part I.A, are not subject to res judicata, the Court declines to address the judicial estoppel argument.

### F.  Extent of Res Judicata.

As discussed in Part III.B, the amended complaint includes allegations, missing from the state complaint, implicating both the normal and abnormal forms of bad faith failure to pay a claim.  (Doc. 6, ¶¶ 31-32, 37-38).  The defendant argues that these new claims are also barred by res judicata.  (Doc. 9 at 19).

"Res judicata" literally means, "a thing adjudicated."  Black's Law Dictionary 1425 (9th ed. 2009).  One might understandably assume, then, that the doctrine precludes the re-litigation only of things actually adjudicated in the prior action.  Under Alabama law, however, "[r]es judicata [also] preclude[s] the relitigation of matters that ... *could have been* adjudicated in a prior action."  *Burkes*, 376 So. 2d at 459 (emphasis added, internal quotes omitted).  The defendant argues that the new bad faith claims are barred because they "could have been brought" in the state action.  (Doc. 9 at 19).

The defendant has not addressed the standard by which a court is to determine whether a new cause of action could have been brought in a prior action.

> In Alabama, it is well-settled that the principal test for comparing causes of action for the application of *res judicata* is whether the *primary right and duty or wrong* are the same in each action.  ...  Res judicata applies not only to the *exact legal theories* advanced in the prior case, but to *all legal theories and claims* arising out of the same nucleus of operative facts.  ...  The question is whether the same evidence substantially supports both actions [and] is considered the same cause of action when the same evidence is applicable in both actions.  ...  As it is sometimes stated, where two successive suits seek recovery for the same injury, a judgment on the merits operates as a bar to the later suit, even though a different legal theory of recovery is advanced in the second suit.

*Old Republic Insurance Co. v. Lanier*, 790 So. 2d 922, 928 (Ala. 2000) (emphasis in original, internal quotes omitted).  Based on this standard, it appears likely that the new bad faith claims embedded in the instant complaint could have been brought in the state action.  However, the defendant has not addressed whether such a claim should be harnessed to the fraud and outrage claims (as to which res judicata applies) or to the contract and bad faith claims (as to which res judicata does not apply), and the Court declines to consider that issue on its own.

**G. Summary.**

The plaintiff's claims for fraud and outrage are barred under the doctrine of res judicata, and these claims therefore will not be addressed in subsequent sections of this opinion.  The plaintiff's claims for bad faith and breach of contract, to the extent asserted

in the state action, are not barred by res judicata.  Whether the plaintiff's bad faith claims first asserted in this action are barred by res judicata remains an open question.

## II. Collateral Estoppel.

The defendant argues that all of the plaintiff's claims are barred by the doctrine of collateral estoppel.  (Doc. 9 at 14, 19-21).  "In considering whether to give preclusive effect to state-court judgments under ... collateral estoppel, the federal court must apply the rendering state's law of preclusion."  *Community State Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir. 2011).  "For the doctrine of collateral estoppel to apply, the following elements must be established:  (1) that an issue in a prior action was identical to the issue litigated in the present action; (2) that the issue was actually litigated in the prior action; (3) that the resolution of the issue was necessary to the prior judgment; and (4) that the same parties are involved in the two actions."  *Lee L. Saad Construction Co. v. DPF Architects, P.C.*, 851 So. 2d 507, 520 (Ala. 2002) (internal quotes omitted).  As the party asserting the affirmative defense, the defendant bears the burden of proving each of these elements.  *Id*.  The parties are in agreement on these points.  (Doc. 9 at 19-20; Doc. 11 at 12-13).

In the state action, the plaintiff filed a motion to compel and for sanctions, arguing that the defendant's reason for refusing consent to the settlement with Wilbur was not reasonable and that, as a result, the state court should require the defendant to consent.  (Doc. 9-1 at 119).  As to the first point, the state judge found that the defendant did not (as it had represented to the court) refuse consent based on questions regarding the plaintiff's liability but that the defendant's "primary or sole reason for refusing to consent to the settlement was to avoid being left alone to face a direct action concerning the UIM coverage."  (*Id*. at 120).  The court accordingly found that the defendant "acted unreasonabl[y] in refusing to consent to the Wilbur settlement."  (*Id*. at 121).  As to the remedy for the defendant's unreasonable refusal to consent, the state judge declined to compel the defendant to consent to settlement, believing that such a remedy was in tension with certain Alabama precedents "protecting the liability phase of trial from the

introduction of insurance." (*Id*. at 120). Instead, the court "fashioned a remedy unsupported by any known case law," *viz*., a waiver of any subrogation rights concerning the Wilbur settlement. (*Id*. at 120-21). Subsequently, the plaintiff filed the amended complaint asserting the contract and tort claims identified previously. (*Id*. at 122-28).

The defendant contends that all of the plaintiff's claims in this action "depend upon [his] assertion that [the defendant] had no right to opt out of the proceedings, ... an issue actually and necessarily resolved against him in" state court. (Doc. 9 at 14). On the thin argument placed before it, the Court cannot conclude that any issue actually litigated and necessarily resolved in the state action is "identical" to an issue in this case.

As the defendant recognizes, (Doc. 9 at 5-6, 20), the state court ruled that compelling the defendant to consent to the settlement (thereby precluding it from opting out of the proceedings) was not a proper "remedy" for the defendant's unreasonable refusal of consent. (Doc. 9-1 at 119-21). What constitutes a proper remedy of course depends on the claim being asserted. The only claim asserted at the time of the state court's ruling was a violation of a state judicial rule requiring that the withholding of consent be reasonable. No claim for breach of contract or bad faith was before the state court, nor was any request for a monetary remedy. The state court did not decide, and was not asked to decide, the issue presented here: whether an insurer unreasonably refusing to consent to a settlement, even if it is granted leave to opt out of the proceedings, may be held financially liable under a contract or bad faith theory for the consequences of its unreasonable refusal. No matter how obvious the defendant may believe the proper resolution of that question to be, it was neither actually litigated nor necessarily resolved in the state action.

## III. Failure to State a Claim.

Before reaching the defendant's arguments, the Court considers a global challenge asserted by the plaintiff in opposition to the motion to dismiss.

### A.  Judicial Estoppel.

This action was initiated in state court and removed to federal court on the basis of diversity jurisdiction.  (Doc. 1).  The Court, upon transfer of the action to its docket, entered an order questioning whether the defendant had satisfied its burden of demonstrating that the amount in controversy exceeds $75,000, exclusive of interest and costs.  (Doc. 20).  Based on the defendant's supplemental filing, (Doc. 24), the Court pronounced itself satisfied that the amount in controversy attains the jurisdictional threshold.  (Doc. 25).

The plaintiff promptly filed a motion to remand, denying that the defendant had met its burden of establishing the requisite amount in controversy.  (Doc. 26).  The plaintiff argued in part that the defendant was taking a position in support of its jurisdictional argument that was inconsistent with its position on its then-ripe motion to dismiss, such that, should the defendant prevail on its jurisdictional argument, it should be estopped from pursuing the inconsistent position on motion to dismiss.   (*Id*. at 4-5).  In its order denying the motion to remand, the Court deemed the estoppel argument premature but permitted the parties to file supplemental briefing on the motion to dismiss to address the issue.  (Doc. 31 at 4-5, 7).  The parties did so.  (Docs. 32, 34).[5]  The plaintiff, who previously argued equitable estoppel as well as judicial estoppel, now confines his argument to judicial estoppel.  (Doc. 32 at 1).

---

[5] The plaintiff asks the Court to consider both its supplemental brief and additional briefing on estoppel contained in his briefs on motion to remand.  (Doc. 32 at 7 n.4).  The defendant likewise refers to its prior briefing.  (Doc. 34 at 4).  The Court will not consider the previous filings, because it permitted the parties to file up to eight pages of supplemental briefing, (Doc. 31 at 7), more than ample for the task.  The parties may not circumvent that page limitation by referring the Court to additional briefing elsewhere.  *Collar v. Austin*, 86 F. Supp. 3d 1294, 1305 n.22 (S.D. Ala. 2015).

The parties agree that Alabama law on judicial estoppel governs. (Doc. 32 at 7; Doc. 34 at 3).[6] "The elements of judicial estoppel are (1) a party's assumption of a clearly inconsistent position in a later proceeding compared to that assumed by that party in a previous proceeding; (2) that party's success in the previous proceeding such that acceptance of the party's position in the later proceeding would give rise to the perception that the first or second tribunal was misled by the party; and (3) the party's derivation of an unfair advantage or imposition of an unfair detriment on that party's opponent in the later proceeding." *Thornbury v. Madison County Commission*, 274 So. 3d 294, 298 (Ala. Civ. App. 2018) (emphasis omitted).[7]

The defendant denies that it has taken inconsistent positions, (Doc. 34 at 4-5), and the Court agrees. The plaintiff, (Doc. 32 at 2), identifies the following as the critical statement: "[T]he damages Plaintiff seeks for breach of the consent-to-settle clause are not, to a 'legal certainty,' unrecoverable under Alabama law ...." (Doc. 29 at 6-7).[8] The plaintiff says that, given the Court's acceptance of subject matter jurisdiction, the defendant "should be precluded from now seeking dismissal as a matter of law for the alleged non-recoverability of those very same damages." (Doc. 32 at 3).

An element of claimed damages must be considered in the jurisdictional analysis "unless it is apparent to a legal certainty that such cannot be recovered." *Holley*

---

[6] It is not immediately apparent why state judicial estoppel principles should govern when both of the allegedly inconsistent positions were taken in federal court, but that appears to be the rule in the Eleventh Circuit when jurisdiction is based on diversity. *Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1358 n.7 (11th Cir. 2018). As this Court has noted, the rule is not universally recognized. *Caribbean I Owners' Association, Inc. v. Great American Insurance Co.*, 619 F. Supp. 2d 1178, 1183 n.6 (S.D. Ala. 2008).

[7] This formulation suggests that judicial estoppel does not apply when, as here, both positions were taken in the same lawsuit. *See Searcy*, 902 F.3d at 1358 n.7 (because, under Florida law, judicial estoppel applies only when the inconsistent positions are taken in "separate proceedings," it "does not apply to inconsistent positions taken in the course of a single trial"). Because the defendant does not make this argument, the Court does not rely on it.

[8] The plaintiff quotes from the defendant's brief in opposition to the motion to remand, but the defendant had previously made essentially the same statement in its supplemental briefing filed in the course of the Court's *sua sponte* review of its jurisdiction. (Doc. 24 at 8).

*Equipment Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987). As the Court has noted, "[t]his standard requires either that a state statute or judicial precedent expressly precludes recovery of the element of damages in question or that preclusion is plain from such sources though not explicitly spelled out." *Parker v. Exterior Restorations, Inc.*, 2022 WL 2532171 at *4 (S.D. Ala. 2022). This standard is "quite high," *id.*, and it requires something like the clarity present in *Boyd v. Homes of Legend, Inc.*, 188 F.3d 1294 (11th Cir. 1999). In *Boyd*, Alabama law explicitly precluded the recovery of punitive damages in warranty cases, so it was pellucidly clear that it did not permit recovery of punitive damages in the specific warranty context of the Magnuson-Moss Warranty Act. *Parker*, 2022 WL 2532171 at *4.

To prevail on its Rule 12(b)(6) motion, in contrast, the defendant need only persuade the Court that Alabama would not recognize the plaintiff's cause of action and allow recovery of the resultant damages, however tangled the path may be to that conclusion; the defendant need not show that Alabama precludes such recovery with the rarefied clarity present in *Boyd*. In short, the defendant's position on the jurisdictional question that "the damages Plaintiff seeks for breach of the consent-to-settle clause are not, *to a 'legal certainty*,' unrecoverable under Alabama law" is not inconsistent with its position on motion to dismiss that the damages the plaintiff seeks are unrecoverable.[9]

In addition to judicial estoppel, the plaintiff invokes the principle of judicial admission. (Doc. 32 at 4). The plaintiff did not seek, and the Court did not grant, leave to present argument on any theory other than estoppel. (Doc. 31 at 4).[10] Even were the argument properly before the Court, judicial admissions apply to facts, not legal arguments. *E.g., Alabama-Tombigbee Rivers Coalition v. Norton*, 338 F.3d 1244, 1254

---

[9] In similar fashion, an assertion that a proposition has not been proved beyond a reasonable doubt would not be inconsistent with an assertion that the proposition has been proved by a preponderance of the evidence.

[10] *See generally Colonial Refrigerated Transportation, Inc. v. Mitchell*, 403 F.2d 541, 550 n.24 (5th Cir. 1968) (distinguishing the concepts of judicial estoppel and judicial admission).

n.9 (11th Cir. 2003).  And even did the principle apply to legal positions, the defendant's 'admission' would bar it only from arguing that the plaintiff's damages are unrecoverable *to a legal certainty*, not that those damages are unrecoverable at all.

### B.  Breach of Contract.

The Policy contains a provision entitled, "Consent to Settlement."  It provides that the insured must request the defendant's written consent to accept a settlement offer made on behalf of the underinsured driver.  If the defendant informs the insured in writing that it does not consent, the insured may not accept the offer, and the defendant will make payment to the insured, in the amount of the settlement offer, "in order to preserve our right of subrogation."  (Doc. 9-1 at 185-86).[11]

According to the amended complaint, a consent-to-settle clause is valid for only two reasons:  (1) to protect the insurer's subrogation rights; and (2) to protect the insurer against the possibility of collusion between its insured and the tortfeasor (or the tortfeasor's insurer).  An insurer's refusal to consent must be for one or both of these reasons, and its refusal must further be reasonable.  The defendant did not refuse to consent for either of these valid reasons but instead for the invalid reason that it did not want to be the defendant at trial, as the state judge found.  The defendant did not want to be the defendant at trial because it believed and knew that the jury was less likely to award substantial damages against the young female tortfeasor, whose ability to pay a large award was unknown to the jury.  The defendant again refused to consent even after the state judge barred the defendant from seeking subrogation, and even though there was no evidence or allegation of collusion.  (Doc. 6 at 3-6).

The amended complaint continues that, by withholding its consent for a reason other than those deemed valid under state law, the defendant breached the contract. Nevertheless, because accepting the offer of Wilbur's insurer without the defendant's consent would have resulted in the defendant denying UIM coverage, the plaintiff was

---

[11] The parties agree that the Court may consider this Policy language without converting the motion to dismiss into one for summary judgment.  (Doc. 9 at 22-23; Doc. 11 at 16).

forced to proceed to trial against Wilbur, where the damages awarded were less than they would have been had the defendant been the defendant in the state trial.  In addition, the cost of proceeding to trial against Wilbur was greater than it would have been had the defendant consented to settlement.  (Doc. 6 at 4-6).

The defendant identifies three reasons the amended complaint fails to state a claim for breach of contract:  (1) it fails to show that such a claim is actionable; (2) it fails to show that the defendant breached the consent-to-settle provision; and (3) it fails to show that the plaintiff sustained any damages from the defendant's refusal to consent.  (Doc. 9 at 14-15, 22).

### 1.  Cause of action.

The defendant points to no authority ruling out a breach of contract claim based on an insurer's breach of its policy's consent-to-settle provision.  Instead, the defendant asserts that the Alabama Supreme Court "has never [affirmatively] recognized" a cause of action for an unreasonable refusal of consent and that "no case law in Alabama supports the recognition" of such a claim.  (Doc. 9 at 23).  For this proposition, the defendant references three precedents:  *United Services Automobile Association v. Allen*, 519 So. 2d 506 (Ala. 1988); *Lambert v. State Farm Mutual Automobile Insurance Co*., 576 So. 2d 160 (Ala. 1991); and *Turner v. State Farm Mutual Automobile Insurance Co*., 310 So. 3d 354 (Ala. 2020).  (Doc. 9 at 3 n.2, 23).

The *Allen* Court upheld an order enjoining the insurer from withholding its consent to settlement after finding "nothing in the record ... to show that [the insurer] had a reasonable basis for withholding such consent."  519 So. 2d at 508.  The *Lambert* Court summarized *Allen* as "hold[ing], of course, that the refusal of an underinsured motorist insurance carrier to consent to settle must be reasonable ...."  576 So. 2d at 164.  The defendant asserts without explanation that *Allen* establishes that, prior to *Lambert*, the "only" recourse available to an insured whose UIM insurer refused to consent to settlement "was to get a court injunction."  (Doc. 23 at 3 n.2; *accord id*. at 23).  *Allen*, however, supports no such proposition; the mere fact that it *involved* an injunction

(because that is the remedy the plaintiff sought and the lower court employed) does not remotely suggest that *only* an injunction is available to a plaintiff.

The Alabama Supreme Court in *Lambert* acknowledged that it "has not yet clearly defined what procedures apply when an injured insured wants to settle with the tort-feasor" and his UIM insurer "does not want to give its consent to settle, or wants to protect its subrogation rights." 576 So. 2d at 165. The *Lambert* Court established such a procedure, *id*. at 167, which the defendant says it followed. (Doc. 9 at 2). The defendant says that compliance with the *Lambert* protocol eliminates any "reasonableness" restriction on an insurer's exercise of the right to withhold consent, which it says is demonstrated in that, post-*Lambert*, "the Alabama courts have never required UIM insurers to defend the 'reasonableness' of their withholding consent to a settlement" as long as they follow the *Lambert* procedure. Given that history, the defendant concludes that it "taxes credulity" to imagine those courts would approve of an insured's breach of contract claim against its UIM carrier for withholding consent. (*Id*. at 2 n.3, 23).

The defendant does not explain, and the Court does not perceive, how *Lambert* eliminates *Allen*'s reasonableness requirement. As noted, the *Lambert* Court explicitly recognized *Allen*'s holding that the insurer's refusal of consent must be reasonable. 576 So. 2d at 164. The *Lambert* Court did not express disagreement with this holding, much less purport to overrule it. On the contrary, it apparently thought the principle so obvious as to preface it with, "of course." *Id*. The *Lambert* Court then proceeded to reverse a defense judgment precisely because "[the defendant's] refusal to consent to the proposed settlement offer ... was unreasonable." *Id*. at 168.

As to post-*Lambert* jurisprudence, it is irrelevant what Alabama courts "have never required," if they have never been asked to require it. The defendant fails to identify the "courts" (implying they are legion) to which it refers, and it is not the Court's responsibility either to assume such decisions exist or to independently confirm their existence and content.

The single post-*Lambert* case to which the defendant cites is *Turner*, which "reaffirm[ed] th[e] principle" that "the refusal of an underinsured motorist insurance

carrier to consent to settle must be reasonable." 310 So. 3d at 363 (internal quotes omitted). This quote, of course, runs directly counter to the defendant's argument. The defendant dismisses the quote as dicta but, even assuming for argument that it is, the defendant still has identified no support for its position that the Alabama Supreme Court would not permit a contract claim for breach of a consent-to-settle provision.

### 2. Breach.

In a laconic four lines, the defendant asserts that, far from alleging a breach, the amended complaint "alleges that [the defendant] did precisely what these provisions required of it:  In not consenting to the settlement offer, it advanced an amount to [the plaintiff] that was equal to Wilbur's insurer's settlement offer." (Doc. 9 at 24).

The amended complaint alleges far more than what the defendant identifies. It alleges in pertinent part that, pursuant to Alabama Supreme Court precedent, a consent-to-settle clause "is valid for two reasons," *viz*., to protect the insurer's subrogation rights and to protect the insurer against the possibility of collusion between its insured and the tortfeasor's insurer. If a UIM carrier wishes to enforce such a clause for one of these two allowable reasons, Alabama law further provides that its refusal to consent must be reasonable. The defendant "breached the contract by refusing to comply with the [consent-to-settle] clause in that it was not following the law wherein there are only two valid reasons for said consent to settle clause, and neither were [the defendant's] reason for withholding consent." (Doc. 6 at 3-4). These allegations clearly allege the scope of the defendant's contractual duty and how the defendant breached it. Because the defendant does not address the amended complaint's actual allegations, its argument cannot succeed.[12]

---

[12] In its reply brief, the defendant appropriately responds to arguments raised in the plaintiff's brief (which are not necessary to proper resolution of the instant motion), but it also improperly seeks without explanation to inject supporting material and argument that should have been included in its initial briefing on the contract claim. (Doc. 14 at 6-12). The Court does not consider non-jurisdictional arguments first raised in a reply brief unless the offending

### 3. Damages.

The amended complaint alleges that the plaintiff "was harmed in that the verdict he obtained against Wilbur was artificially lower than the verdict would have been had [the defendant herein] been the Defendant at trial as there would not have been any concern by the jury as to whether Wilbur, a younger female Defendant, could afford such a verdict against her." (Doc. 6, ¶ 28). The defendant argues that this allegation of greater damages had it been the defendant at trial "is pure speculation." (Doc. 9 at 24). The defendant correctly notes that "'[t]he award of damages cannot be made upon speculation,'" (*id*. (quoting *Johnson v. Harrison*, 404 So. 2d 337, 340 (Ala. 1981))), but that principle, as in *Johnson*, addresses the evidence that must support an award at trial, not the adequacy of a pleading.

The defendant next argues that the "possibility of a higher verdict against an insurer in a direct action based on the 'corrupting influence' of the mention of insurance, is precisely why" Alabama allows insurers, after making a "*Lambert* advance," to opt out of trial against the underinsured tortfeasor. (Doc. 9 at 24). As the plaintiff notes, (Doc. 11 at 19), this argument runs directly counter to any suggestion that the amended complaint's damages assertion is speculative.

In its reply brief, the defendant explains that its "corrupting influence" argument means that any award of damages under the plaintiff's theory "would be impermissible as a matter of public policy under Alabama law." (Doc. 14 at 13). Because the defendant did not introduce "public policy" as an argument until its reply brief, the Court declines to consider it. *See* note 11, *supra*. In any event, the defendant has not attempted to show that Alabama public policy would protect a UIM insurer that, as the defendant is alleged to have done, unreasonably withholds consent to settlement.

---

party offers an adequate reason for its failure to present them initially. *E.g., Parker v. Exterior Restorations, Inc*., 653 F. Supp. 3d 1105, 1108 (S.D. Ala. 2023).

### C. Bad Faith.

The amended complaint pursues bad faith through several avenues.  First, it alleges that the defendant "acted in bad faith ... in refusing to consent to" the Wilbur settlement.  (Doc. 6, ¶ 23; *accord id.*, ¶¶ 16, 35, 38).  Second, it alleges a "normal" bad faith denial of a claim.  (*Id.*, ¶ 31).  Third, it alleges an "abnormal" bad faith denial of a claim.  (*Id.*, ¶¶ 32, 37).  The Court considers these in turn.

### 1. Bad faith refusal of consent to settlement.

In a spare six lines, the defendant declares that "the tort of bad faith has only been recognized where an insurer fails to pay a claim," and it concludes that "[a] breach of other promises in a policy cannot support a bad faith claim."  (Doc. 9 at 26; *accord id.* at 9).  The defendant has established neither its premise nor its conclusion.

As to the premise, it is difficult to prove a universal, but the defendant makes no effort to do so, offering only its *ipse dixit*.  As to the conclusion, the defendant rests entirely on *Raybon v. Allstate Insurance Co.*, 589 So. 2d 710 (Ala. 1991), which made no such global pronouncement but merely declined to depart from the pre-bad faith rule that "the contract remedy is the only remedy available where an insurer wrongfully cancels, terminates or repudiates a contract of insurance ...."  *Id.* at 711 (internal quotes omitted).

Perhaps a reasonable argument, supported by precedent and cogent reasoning, could be marshaled against the recognition of a bad faith claim in the specific context of the improper refusal of a UIM insurer to consent to its insured's settlement with the tortfeasor and her insurer.  The defendant, however, has presented no such argument, and in its absence the Court declines to conclude that the Alabama Supreme Court would not recognize such a claim.

The defendant's only other challenges to this claim are that the plaintiff has not alleged a plausible claim for breach of the consent-to-settle provision and cannot show any damage resulting from such a breach.  (Doc. 9 at 15, 25-26).  These arguments fail for reasons stated in Part III.B.

### 2. Normal and abnormal bad faith.

Alabama law recognizes two forms of bad faith: "normal" and "abnormal." These are not two torts but a single tort "with different options for proof." *State Farm Fire and Casualty Co. v. Brechbill*, 144 So. 3d 248, 257-58 (Ala. 2013).

"We have repeatedly held that the tort of bad-faith refusal to pay a claim has four elements – (a) a breach of insurance contract, (b) the refusal to pay claim, (c) the absence of arguable reason, (d) the insurer's knowledge of such absence – with a conditional fifth element: (e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim." *Brechbill*, 144 So. 3d at 258 (internal quotes omitted). "Thus, for the tort of bad-faith refusal to pay, requirements (a) through (d) represent the 'normal' case. Requirement (e) represents the 'abnormal' case." *Id*. (internal quotes omitted).

The defendant's only argument is that the record establishes as a matter of law a "legitimate reason"[13] for its failure to pay the plaintiff's UIM claim. (Doc. 9 at 26-27). "Regardless of whether the claim is a bad-faith refusal to pay or a bad-faith refusal to investigate, the tort of bad faith requires proof of the third element, absence of legitimate reason for denial …." *Brechbill*, 144 So. 3d at 258. The plaintiff acknowledges that the third element is required for both the normal and the abnormal bad faith varieties. (Doc. 11 at 22). The defendant's argument, if meritorious, therefore would defeat both claims.

The defendant's only argument regarding the third element is its unexplained assertion that "the amended complaint and the records of the circuit court show that ... the amount of UIM liability was legitimately in dispute." (Doc. 9 at 26). The defendant identifies, and the Court can find, nothing in the amended complaint alleging that the defendant legitimately disputed the amount of the plaintiff's damages. For this

---

[13] The *Brechbill* Court described the sort of reason envisioned by the third element as "arguable," "legitimate," and "debatable," and it also spoke of a "lawful basis" for denying a claim. 144 So. 3d at 258, 260.

proposition, the defendant relies on a representation it made to the state judge in response to the plaintiff's motion to compel information regarding the defendant's refusal to consent to the Wilbur settlement. (Doc. 9-1 at 18-20).[14]  The plaintiff objects to the consideration of state court documents contrary to law. (Doc. 11 at 5, 15, 21).

As noted in Part I, in resolving a Rule 12(b)(6) motion, a court may take judicial notice of filings in state court litigation. *Osheroff*, 776 F.3d at 811 n.4. The defendant, however, fails to address the purposes for which a court may do so. (Doc. 9 at 1-2 n.1). *Osheroff* suggests, in the sentence immediately following the one on which the defendant relies, that the Court may take judicial notice of documents "for the limited purpose of determining which statements the documents contain (but not for determining the truth of those statements)." *Id*. The defendant's state court brief asserted that the defendant conducted a "reasonable investigation [that] revealed legitimate questions about the amount of liability." (Doc. 9-1 at 19). *Osheroff* indicates the Court may accept that the defendant made such a statement, but not that the statement is truthful.[15]

The defendant's summary of argument asserts, in a single unamplified sentence, that "[t]he jury verdict conclusively shows that [the plaintiff's] damages did not exceed the UIM limits and that [the defendant] thus had a legitimate reason for disputing the amount of UIM benefits owed." (Doc. 9 at 15; *see also id*. at 22 n.5). Because the amended complaint alleges that the jury verdict was artificially depressed due to the defendant's absence, the Court cannot accept on motion to dismiss the defendant's contrary *ipse dixit* that the verdict is conclusive of the plaintiff's damages.

---

[14] The defendant in its argument section failed to identify the portion of the voluminous state record on which it relies, forcing the Court to play detective by rummaging through the defendant's extensive statement of the case's factual background. (Doc. 9 at 3).

[15] One could not, for example, imagine that a defendant could require a court weighing a Rule 12(b)(6) motion to accept as true that the light was green simply because the defendant, in a prior lawsuit, had asserted in a brief that the light was green.

The defendant, in short, has failed to establish its single argument, *viz*., that for purposes of this motion it is established that the defendant legitimately disputed the amount of its liability.

## CONCLUSION

In their opposition and reply briefs, the parties raise interesting and potentially difficult legal questions concerning the plaintiff's contract and bad faith claims. The defendant's failure to meet its initial burden in its principal brief obviates consideration of the plaintiff's arguments, and the defendant may not in its reply brief inject new, previously available arguments that it omitted without explanation from its principal brief. The Court has and expresses no opinion regarding the proper ultimate resolution of these questions on post-discovery motion for summary judgment.

For the reasons set forth above, the defendant's motion to dismiss is **granted** with respect to the plaintiff's claims of fraud and outrage and is in all other respects **denied**. The fraud and outrage claims are **dismissed with prejudice**.

DONE and ORDERED this 12th day of February, 2025.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE