**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL WAYNE HOWELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **1:24-cv-00241-WS-C** |
| **STATE FARM MUTUAL** | ) | |
| **AUTOMOBILE INSURANCE** | ) | |
| **COMPANY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

This cause is before the Court on the Plaintiff's Motion to Compel and Memorandum in Support (Doc. 64), State Farm Mutual Automobile Insurance Company's Response to Plaintiff's Motion to Compel (Doc. 69), and Plaintiff's Reply to Defendant's Response to Plaintiff's Motion to Compel and Memorandum in Support (Doc. 72). Upon consideration of the foregoing, counsel's oral argument, and the record, it is determined that Plaintiff's Motion to Compel should be DENIED.

I.    Background of Case

This action was removed to this Court from the Circuit Court of Mobile County, Alabama on July 16, 2024. (Doc. 1). Plaintiff, Michael Wayne Howell ("Plaintiff") instituted Civil Action No. CV-2024-901246, styled *Michael Wayne Howell v. State Farm Mutual Automobile Insurance Company*, on May 14, 2024, against State Farm ("Defendant") in the Circuit Court of Mobile County, Alabama. This lawsuit arises out of Plaintiff's underinsured motorist ("UIM") claim with Defendant, his automobile insurance carrier, and Defendant's alleged improper conduct in Plaintiff's underlying state court lawsuit against Defendant and non-party, Taylor Wilbur. In his

Amended Complaint, Plaintiff stated claims against Defendant for breach of contract, bad faith, fraud and outrage.[1] Judge Steele dismissed the fraud and outrage claims, but the breach of contract and bad faith claims remain pending. (Doc. 35).

II.    Legal Standard

The scope of discovery is governed by Rule 26 of the *Federal Rules of Civil Procedure*, which permits the discovery of any non-privileged material "relevant to the claim or defense of any party" and relevant information need not be admissible at trial if the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). Specifically, Federal Rule of Civil Procedure 26(b)(1) provides as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

While the scope of discovery is broad, there are limitations, as "a party cannot discover even relevant information if the information is not 'proportional to the needs of the case.'" *Garber v. Nationwide Mut. Ins. Co.*, No. 5:21-CV-00546-HNJ, 2022 WL 1420916, at *10 (N.D. Ala. Mar. 24, 2022). (quoting Fed. R. Civ. P. 26(b)(1)). "To determine the proportionality of a discovery request, the court assesses 'the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the

---

[1] As explained by Judge Steele in the Order on Defendant's Motion to Dismiss, the Amended Complaint fails to set forth causes of action in separate counts, but the parties agree that the pleading attempts to set forth claims for breach of contract, bad faith, fraud and outrage. (Doc. 35)

importance of the discovery in resolving the issues, and whether the burden or expense of the

proposed discovery outweighs its likely benefit.'" *Id.*

As discussed below, the undersigned finds that Plaintiff's requests are not relevant to his breach

of contract claim and bad faith claim and are not proportional to the needs of the case based on the

factors set forth in Rule 26(b)(1).

III.    Analysis and Conclusions of Law

A.  Whether Plaintiff's Requests for Production are Relevant to His Breach of Contract
Claim and Bad Faith Claim and are Proportional to the Needs of the Case

In the instant case, Plaintiff's Amended Complaint claims that Defendant breached the contract

of insurance by withholding its consent to settle for a reason other than those deemed valid under

Alabama state law. Plaintiff also alleges both normal and abnormal bad faith denial of a claim and

that Defendant acted in bad faith in refusing to consent to settlement. (Doc. 6, PageID.326 at ¶23,

PageID.328 at ¶31, PageID.328-329 at ¶32). Further, Plaintiff's Amended Complaint alleges a

pattern of conduct by Defendant in its refusal to consent to settlements. ("[T]he vast majority of

times that [State Farm] refuses to consent to settlement, are done so with no real or good faith

intention of pursuing subrogation against the tortfeasors… .") (Doc. 6, PageID.330 at ¶ 36).

The discovery issues raised by Plaintiff in his Motion to Compel concern Plaintiff's Request

for Production of Documents numbers 5, 6, 12 and 16 and Defendant's responses thereto.

Plaintiff's requests and Defendant's responses to same are as follows:

> **5**. Provide a list of all claims from 2020 until present for Alabama wherein State
> Farm at any point, refused to consent to a liability settlement between its insured
> and a tortfeasor and/or liability carrier, wherein the tortfeasor/liability carrier had
> offered to settle for its liability limits. This would include, but not limited to,
> claims/cases where consent was initially withheld, but later allowed due to a full
> settlement or verdict. You may redact the first OR last name of the insured to protect
> privacy.
>
> **RESPONSE:** State Farm objects to this request on the grounds that the term "all

claims from 2020 until present for Alabama" is vague and ambiguous. First, this case involves only Plaintiff's insurance claim with State Farm, and other claims are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different policies, coverages, terms, and endorsements, in addition to different automobile accidents, liability issues, alleged injuries, damages, tortfeasors, liability limits, UIM limits and venues. The existence of other claims and/or what may or may not have occurred with respect to another claim will neither prove nor disprove any alleged wrongdoing that occurred in this case, as each claim is handled on its own individual merits. Additionally, production of claim files over a 5 year, and including dates prior to the Plaintiff's date of loss is patently overbroad because it would presumably encompass many different incidents which could be vastly different than the incident at issue in this case and are irrelevant, such that this request is not reasonably calculated to lead to relevant facts. State Farm Mutual Auto. Ins. Co. v. Campbell, 538 U.S. 408 (2003).

State Farm additionally objects because the requested information ultimately implicates personal information of policyholders who are not parties to this action, who have a reasonable expectation of privacy and whose information is safeguarded from disclosure by federal and state privacy laws. Finally, State Farm further objects to this request as unduly burdensome and disproportional to the needs of the case because it would require manual review of claim files in order to identify and redact private and privileged information. Plaintiff has not established that such information is necessary to a fair adjudication of this case.

6. Provide a list of all claims from 2020 until present for Alabama wherein State Farm, within 30 days of being provided with notice of the policy limits offer from the liability carrier, State Farm consented to a liability settlement between its insured and a tortfeasor and/or liability carrier, wherein file tortfeasor/liability carrier had offered to settle for its liability limits. You may redact the first OR last name of the insured to protect privacy.

**RESPONSE:** State Farm objects to this request on the grounds that the term "all claims from 2020 until present for Alabama" is vague and ambiguous. First, this case involves only Plaintiff's insurance claim with State Farm, and other claims are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different policies, coverages, terms, and endorsements, in addition to different automobile accidents, liability issues, alleged injuries, damages, tortfeasors, liability limits, UIM limits and venues. . The existence of other claims and/or what may or may not have occurred with respect to another claim will neither prove nor disprove any alleged wrongdoing that occurred in this case, as each claim is handled on its own individual merits. Additionally, production of claim files over a 5 year, and including dates prior to the Plaintiff's date of loss is patently overbroad because it would presumably encompass many different incidents which could be vastly different than the incident at issue in this case and are irrelevant, such that this request is not reasonably calculated to lead to relevant facts. State Farm Mutual Auto. Ins. Co. v. Campbell, 538 U.S. 408 (2003).

4

State Farm additionally objects because the requested information ultimately implicates personal information of policyholders who are not parties to this action, who have a reasonable expectation of privacy and whose information is safeguarded from disclosure by federal and state privacy laws. Finally, State Farm further objects to this request as unduly burdensome and disproportional to the needs of the case because it would require manual review of claim files in order to identify and redact private and privileged information. Plaintiff has not established that such information is necessary to a fair adjudication of this case.

12. Any and all documents or things or other information pertaining to whether and how State Farm values claims differently depending on the Defendant in the case.

RESPONSE: State Farm objects to this request on the grounds that it is vague, confusing and an incomplete request. The term "depending on the Defendant in the case" is unclear and does not provide sufficient information as worded that would permit a response. State Farm objects to this request on the grounds that it is overly broad in scope (types of claims and insurance coverage), time (not limited by the period of time when this claim was handled), and geographic area (not limited to Alabama). This request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit and is potentially unduly burdensome; it seeks information that is neither relevant to the claims or defense of any party nor proportional to the issues in this case. State Farm's procedures are intended to provide guidance, but each claim is handled on its own merits. State Farm objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrine. Finally, State Farm objects to this request to the extent it seeks confidential, proprietary business information and/or trade secrets. Plaintiff has not established that such information is necessary to a fair adjudication of this case.

16. A list of all claims/cases since 2020 in Alabama where a lawsuit was filed by State Farm to pursue subrogation for UIM bodily injury payments made by State F arm to its insured.

RESPONSE: State Farm objects to this request on the grounds that the term "all claims/cases since 2020 in Alabama" is vague and ambiguous. First, this case involves only Plaintiff's insurance claim with State Farm, and other claims are necessarily unrelated to the specific facts and issues in this case, especially to the extent they involve different policies, coverages, terms, and endorsements, in addition to different automobile accidents, liability issues, alleged injuries, damages, torfeasors, liability limits, UIM limits and venues. The existence of other claims and/or what may or may not have occurred with respect to another claim will neither prove nor disprove any alleged wrongdoing that occurred in this case, as each claim is handled on its own individual merits. Additionally, production of claim files over a 5 year, and including dates prior to the Plaintiff's date of loss is patently overbroad because it would presumably encompass many different incidents which could be vastly different than the incident at issue in this case and

are irrelevant, such that this request is not reasonably calculated to lead to relevant facts. State Farm Mutual Auto. Ins. Co. v. Campbell, 538 U.S. 408 (2003). State Farm additionally objects because the requested information ultimately implicates personal information of policyholders who are not parties to this action, who have a reasonable expectation of privacy and whose information is safeguarded from disclosure by federal and state privacy laws. Finally,

State Farm further objects to this request as unduly burdensome and disproportional to the needs of the case because it would require manual review of claim files in order to identify and redact private and privileged information. Plaintiff has not established that such information is necessary to a fair adjudication of this case.

"Relevance encompasses "'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'"" *Garber v. Nationwide Mut. Ins. Co.*, No. 5:21-CV-00546-HNJ, 2022 WL 1420916, at *6 (N.D. Ala. Mar. 24, 2022). Plaintiff's argument focuses on how the information sought bears relevance to his bad faith claims. Under Alabama law, the tort of bad faith has four elements and a conditional fifth element:

"(a) an insurance contract between the parties and a breach thereof by the

defendant;

"(b) an intentional refusal to pay the insured's claim;

"(c) the absence of any reasonably legitimate or arguable reason for that refusal

(the absence of a debatable reason);

"(d) the insurer's actual knowledge of the absence of any legitimate or arguable

reason;

"(e) if the intentional failure to determine the existence of a lawful basis is

relied upon, the plaintiff must prove the insurer's intentional failure to

determine whether there is a legitimate or arguable reason to refuse to pay

the claim."

> See *Garber*, 2022 WL 1420916, at *7 (quoting *State Farm Fire & Cas. Co. v. Brechbill*, 144 So. 3d 248, 257 (Ala. 2013)).

Neither party has presented any authority establishing the elements that must be met to succeed on a bad faith claim for breach of the "consent-to-settle" provision in an insurance contract based on the theory that the judgment obtained from the tortfeasor was effectively a partial denial of the insured's claim for UM/UIM coverage.

> i.      Plaintiff's Requests for Production Numbers 5 and 6

Regarding request numbers 5 and 6, Plaintiff asserts in his motion that because Defendant's representatives claim there are no manuals, rules, guidelines, or any other materials about how and when Defendant can refuse to consent, Plaintiff is being forced to seek information concerning how Defendant interprets or enforces the Consent to Settlement clause in other claims, and how often Defendant refuses to consent versus agrees to consent. (Doc. 64, PageID.917). Plaintiff argues the information sought is highly relevant to this case because of Defendant's pattern of conduct by refusing to consent to avoid being the defendant at trial. (*Id.*)

Defendant initially objected to requests 5 and 6 on several bases and further argues those objections as well as provides additional argument in its Response to Plaintiff's motion. The undersigned agrees with Defendant that Plaintiff's requests are not sufficiently limited, are burdensome and not proportional to the needs of the case.

In its Response, Defendant contends the information sought by Plaintiff through requests 5 and 6 is not relevant for two reasons: 1) the information will not help prove or disprove Plaintiff's theory that showing how Defendant interprets and/or applies the Consent to Settlement provision in any particular circumstance or reveal anything about Defendant's refusal to consent in one case

or for its consent in another case[2]; and 2) the lists will not help prove or disprove the allegations at issue, i.e. will not provide any information detailing the reasons for Defendant's consent or refusal to consent in any particular case or the circumstances in which the consent was given or refused.[3] (Doc. 69, PageID.1051-1053).

"Claims of Bad Faith are similar to fraud claims in that the plaintiff in effect must show some aspect of the *mens rea* of the insurer." *Hartford Fire Ins. Co. v. Mitchell Co.*, No. CV 08-0623-KD-N, 2010 WL 11425325, at *4 (S.D. Ala. July 15, 2010). In Hartford, a case relied upon by Plaintiff, the district court reasoned that "prior constructions of the policy provision at issue are directly relevant to the reasonable construction to be given to the provision, and to the meaning given the term by the parties at or closer to the 'meeting of the minds' at the time the contract was drafted." *Id*. Further, "[a] change by the insurer of the construction given a policy provision is of particular relevance to a claim of bad faith failure to pay where that provision was the basis for the adverse determination. Add to that an argument that the provision is not ambiguous, and evidence that the insurer itself had previously embraced a different construction is likewise of the utmost relevance." Although the Plaintiff's bad faith claim in the instant case is not based on Defendant's failure to pay, the undersigned finds the court's reasoning in *Hartford* is still applicable under the circumstances of this case. Here, the Plaintiff's remaining claims center on construction of the consent-to-settle provision by Defendant. The undersigned finds that information concerning how Defendant has interpreted the same or similar provisions in previous claims bears relevance to Plaintiff's bad faith claim. However, a review of requests 5 and 6 reveals that Plaintiff has not

---

[2] Defendant denies this case involves an ambiguous consent to settle provision. (Doc. 69, PageID.1052, *see also* note 1.

[3] Defendant denies the existence of a tort claim for bad faith claim handling in Defendant's refusals to consent to tortfeasor settlements. (Doc. 69, PageID.1052-1053).

requested information that would lead to the discovery of Defendant's construction of the consent-to-settle provision in previous claims. The requests at issue simply seek *lists* of claims. Additionally, while the lists requested would allow Plaintiff to see how many times Defendant consented to settlement versus refused to consent since 2020, the circumstances upon which Defendant made its decision in a given case would not be evident from the lists. As written, these requests also do not seek to obtain information showing Defendant's *reason* for refusing to consent, which Plaintiff claims necessary to establish a pattern of conduct by Defendant.

Plaintiff claims that requests 5 and 6 are relevant in proving a pattern of conduct by Defendant in refusing to consent to settlement to avoid being the defendant at trial. "In Alabama, a bad faith plaintiff may discover 'so-called pattern and practice evidence – that is, evidence establishing that a defendant has engaged in the same or similar acts in the past – ... because intent generally must be proved in order to succeed on a bad faith claim.'" *Garber,* 2022 WL 1420916, at *8. Plaintiff alleges a pattern of conduct by Defendant in its Amended Complaint, thus laying a factual foundation to obtain pattern and practice evidence through discovery. *See Hartford Fire Ins. Co. v. Mitchell Co.*, No. CV 08-0623-KD-N, 2010 WL 11425325, at *2 (S.D. Ala. July 15, 2010). Under the circumstances here, Plaintiff would be entitled to discover pattern and practice evidence related to his bad faith claim. However, the undersigned does not see, and it is not explained by Plaintiff, how a list of claims alone would show the mindset of Defendant in constructing the same or a substantially similar consent-to-settle provision differently in other claims. *Id.* Again, the lists requested would show how many times Defendant consented to settle versus refused to settle since 2020, but this information would give little insight into Defendant's intent, which Plaintiff must prove to succeed on his bad faith claim.

9

Based on the foregoing, the undersigned finds that requests 5 and 6 bear little relevance to Plaintiff's bad faith claim, as they do not seek to discover instances where State Farm engaged in the same or similar conduct when confronted with facts similar to those existing in this action. Further, Plaintiff has not carefully tailored the requests "to avoid placing undue burden on defendant." *Garber,* 2022 WL 1420916, at *9.

Pursuant to Rule 26(b)(1), a party cannot discover even relevant information if the information is not "proportional to the needs of the case." *Id.* at *10. "To determine the proportionality of a discovery request, the court assesses 'the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Id.* (citing Fed. R. Civ. P. 26(b)(1)). Plaintiff's motion briefly addresses proportionality, but it lacks an analysis of the Rule 26(b)(1) factors.[4] Plaintiff implies that any proportionality argument Defendant may proffer does not outweigh the relevance of Defendant's decision-making process when it consents and when it refuses to settle. (Doc. 64, PageID.925). Further, Plaintiff contends that he requests very limited claims information, narrowing the scope to specific UIM claims, only in Alabama, wherein the liability carrier offered the policy limits, and Defendant either granted or withheld consents; that there are multiple methods for Defendant to narrow down the search and locate specific information; and there are only a number of firms and attorneys in Alabama that represent Defendant, and only a subset of those handle bad faith claims for Defendant. (*Id.*). In its Response, Defendant contemplates each of the rule 26(b)(1) factors, concluding that requests 5 and 6 are not

---

[4] In his Reply, Plaintiff addresses the proportionality factors for requests 5 and 6 together. (Doc. 72, PageID.1080-1085).

proportional to the needs of the case.  Citing *Garber,* 2022 WL 1420916, at *11, Defendant contends the first factor – "the importance of the issues at stake in the action" – weighs against Plaintiff because this is a private coverage dispute between an insurer and a single insured and does not present "issues of civil rights, governmental action, public policy, or other 'vitally important personal or private values,' beyond the importance of contractual parties upholding their promises." *Id. See also* Fed. R. Civ. P. 26(b)(1). (Doc. 69, PageID.1055). Regarding factor two, Defendant claims that Plaintiff seeks some speculative amount of damages by which the $275,000 verdict he received was less than the verdict he claims he would have received if State Farm had been the defendant at trial, and the cost to review and produce the lists requested would be a significant percentage of, if not exceed whatever the speculative damage differential would be. (Doc. 69, PageID.1054-1055). Defendant suggests that the third factor may weigh, in part, in Plaintiff's favor, as he has no independent access to other claims files of State Farm, but he does have online access to state and federal lawsuits filed in this state. (*Id*. at PageID.1057). Defendant claims that factor four bears little significance to the analysis because Defendant's resources do not provide a significant advantage regarding the requested information. (*Id*.). Further, Defendant argues that the requests are not important in resolving the issues, as the claims lists are not probative of the issues raised by Plaintiff.  (Doc. 69, PageID.1054-1055).

As to factor six, Defendant argues the lists requested by Plaintiff are not probative of the issues raised, and the burden or expense of creating the lists outweighs any likely benefit. (*Id*. at PageID.1055).  In support, Defendant submits declarations of Troy Harms, a State Farm Team Manager, and Jay Thorpe, a Technology Analyst in P&C Claims Enterprise Technology at State Farm that support Defendant's contention that "to create the lists of claims that Plaintiff seeks would require an intense manual claim-by-claim review of some 17,272 UIM claims in Alabama

11

with a date of loss between January 1, 2018, and June 16, 2025." (Doc. 69, PageID.1054; *see also* Doc. 69-1, declaration of Troy Harms, and Doc. 69-2, declaration of Jay Thorpe). Defendant notes that although requests 5 and 6 seek a list of claims going back to 2020, Plaintiff's requests are not limited to UIM claims first recorded on or after January 1, 2020, but would include claims filed before that date but still pending on that date, so Defendant used the starting date of January 1, 2018. (*See* Doc. 69, PageID.1054, note 2). For requests 5 and 6, Plaintiff seeks "a list of all claims from 2020 until present…" This language is vague, as a definitive start date for Defendant's search is not provided.  The requests do not specify whether the Defendant should limit its search to claims recorded on January 1, 2020 and thereafter, or whether Plaintiff seeks claims pending as of 2020 and those recorded on that date and thereafter.  Further, Defendant estimates a manual review time of 1727 hours, which would cost an estimated $61,550.28. (Doc. 69, PageID.1055). Plaintiff has not rebutted Defendant's cost estimate for the requested search, or proposed bearing the cost. No offer of compensation by Plaintiff adds to the issue of whether the request is burdensome to State Farm. Therefore, specific to factor six, the undersigned finds Defendant has demonstrated an undue burden responding to requests 5 and 6 and that such a burden outweighs any likely benefit of the proposed discovery.

The undersigned agrees with Defendant that the discovery sought through requests 5 and 6 bears limited relevance to the bad faith claim and a balancing of the Rule 26(b)(1) factors show the discovery requested is not proportional to the needs of the case.

ii.      Requests for Production Number 12

The undersigned agrees with Defendant's objections to Plaintiff's request number 12 as well as its additional argument set forth in its Response to Plaintiff's Motion to Compel.  It cannot be determined from reading request 12 what information Plaintiff seeks to obtain, and Plaintiff has

failed to adequately explain this in his Motion to Compel and Reply. Plaintiff does not explain how the information sought is relevant to his claims and does not address proportionality in either brief.  Thus, Plaintiff has not shown the request seeks relevant information that is proportional to the needs of the case.

        iii.      Requests for Production Number 16

Under request 16, Plaintiff seeks to discover a list of claims and cases in Alabama since 2020 in which Defendant refused to consent and thereafter followed up by suing a tortfeasor to pursue that subrogation interest. Plaintiff's request is based on Plaintiff's claim that a State Farm representative stated, during a recorded telephone call with Plaintiff's counsel, that "he did nothing to determine whether the tortfeasor had any assets or whether the tortfeasor had any assets or whether the subrogation interest was worth protecting." (Doc. 64, PageID.927).[5] Plaintiff claims the information sought would be significant evidence to support Plaintiff's claims that Defendant is refusing to consent, with no intention of pursuing subrogation, but only to avoid being the Defendant at trial. (Doc.64, PageID.927-928).  In support of its argument, Plaintiff cites to a national treatise regarding the consent to settlement clause and how it is enforced in different states. (Doc. 64, PageID.928).  Plaintiff also cites to case law from Rhode Island and Iowa. (*Id*. at note 2). As preiously listed, Defendant initially objected to this request on several bases. (Doc. 64, PageID.926).

In its Response, Defendant first argues that a list of such claims will neither prove nor disprove the allegations at issue in this case, as it will tell the Plaintiff nothing about the circumstances under which that subrogation was sought. (Doc. 69, PageID.1058). Defendant

---

[5] This quoted statement from an undisclosed State Farm representative that was captured on tape offers little to assist in resolving this motion to compel.

further contends that the fact that a *Lambert*-advancing UIM insurer does not typically pursue subrogation against a tortfeasor is not evidence of a breach of a consent to settlement clause, as *Lambert* does not require insurers to enforce its subrogation right. (*Id*. at PageID.1058). Regarding the national treatise cited by Plaintiff, Defendant contends that in jurisdictions adopting a *Lambert*-type fronting procedure, compliance with the procedure is an alternative to the requirement that the insurer prove that its refusal to consent was reasonable. *Voss v. State Farm Mut. Auto. Ins. Co.*, No. 1:17-CV-01465-SGC, 2021 WL 6095983 (N.D. Ala. Dec. 23, 2021), *aff'd*, No. 22-10243, 2022 WL 3449598 *11th Cir. Aug. 17, 2022) cited by Defendant supports this contention. (*Id*.).

Plaintiff does not address proportionality specific to request 16 in its Motion to Compel or Reply. Defendant argues the discovery sought through request 16 is not proportional to the needs of the case, as with requests 5 and 6.  Defendant claims that 14,942 claims would need to be manually reviewed to determine in which case Defendant filed a legal action, and the expense of producing this information is not outweighed by the potential benefit of this information, if any, to the Plaintiff. Defendant estimates a cost "in the neighborhood of $50,000" to discover this information in its records. (Doc. 69, PageID.1061). Defendant further claims that Plaintiff can access state and federal court records online to discover any subrogation suits filed by State Farm in Alabama during the relevant period of time. Plaintiff did not rebut Defendant's cost estimate for the requested search, or offer compensation for the search, which again adds to the issue of whether the request is burdensome to State Farm.

As written, request 16 seeks information that bears limited relevance on Plaintiff's bad faith claim and is not proportional to the needs of the case for the reasons asserted by Defendant for request 16 and requests 5 and 6. As with requests 5 and 6, Plaintiff has not sufficiently narrowed the scope of the information sought in request 16.

B.  Whether Defendant Should Be Required to Produce an Unredacted Claim File

Plaintiff's request for an undredacted copy of the claim file fails procedurally. First, Plaintiff has not related this request to any specific request for production. Second, Plaintiff has not done the work necessary to identify specific designations in the privilege log that he believes are "lacking specificity"[6] (Doc. 64, PageID.929) or indicated specifically that the redacted information appears to be something relevant to his claims that is not privileged. Neither a copy of Defendant's original privilege log nor the updated privilege log have been provided to the undersigned with either party's briefing on this issue.

Plaintiff states that he has no objection to producing an unredacted version of the claim file to the Court for *in camera* review, if that would relieve State Farm's concern. (Doc. 64, PageID.929).  However, Plaintiff has not met his burden of justifying an *in camera* review of the unredacted claim file in this matter. "An *in camera* review is not appropriate merely because a party objects to assertions of privilege."  *Willoughby v. Gov't Emps. Ins. Co.*, No. 8:23-CV-1260-KKM-NHA, 2024 WL 3183860, at *5 (M.D. Fla. June 26, 2024) (citing *United States v. Zolin*, 491 U.S. 554, 571-572 (1989)). The undersigned declines the invitation to review the claim file *in camera* because Plaintiff has not shown a basis upon which Plaintiff's burden shifts to the Court to perform work that he should have done himself. *Id*. Plaintiff has not provided "a sufficient factual basis to support a good faith belief that *in camera* review will reveal improperly withheld material." *Id*. At this point, the undersigned does not have any information that would indicate an *in camera* revew is necessary.

---

[6] The undersigned directs the parties to the Rule 16(b) Scheduling Order in this matter, specifically Paragraph 11.d., "Privilege or Protection of Trial Preparation Materials," which cites Fed. R. Civ. P. 26(b)(5) as well as the *Introduction to Civil Discovery Practice in the Southern District of Alabama*, Civil Practice Subcommittee (May 13, 2019). (Doc. 36, PageID.770).

Without more information, the undersigned cannot determine whether the motion to compel the unredacted claim file has any merit or would require an *in camera* inspection.

IV.    Conclusion

Based on the foregoing, the Plaintiff's Motion to Compel is DENIED. Defendant is found to be the prevailing party on this motion to compel. If deemed appropriate, State Farm may move to shift costs and attorneys' fees related to litigating the issues raised in the motion to compel following the unsuccessful attempt to resolve the issues without the need for a motion. Such a motion must be filed not later than August 20, 2025.

**DONE and ORDERED** this 6th day of August 2025.

<u>**s/WILLIAM E. CASSADY**</u>
**UNITED STATES MAGISTRATE JUDGE**

16